# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| RUSH HOUR LIVE ESCAPE GAMES LLC,<br><br>Plaintiff,<br><br>v.<br><br>MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY d/b/a MUSIC,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil Action No.: 3:20-cv-323 |

Plaintiff Rush Hour Live Escape Games LLC ("Plaintiff" or "Rush Hour") brings this Complaint alleging against Defendant Mesa Underwriters Specialty Insurance Company ("Defendant" or "MUSIC") as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2. In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in store businesses must shut down, Plaintiff shut its doors for customers on March 17, 2020.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## JURISDICTION

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff.  Plaintiff is a Limited Liability Company whose members, Paul Wood and Cheryl Wood are citizens of the Commonwealth of Virginia.  Also, Plaintiff's additional members, Phillip Munro is a citizen of Canada and Chesapeake Renal Properties, LLC whose principal place of business is in Virginia.  Further, the amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of the alleged business losses. *Id.* § 1332(a).  Plaintiff has suffered business losses in an amount greater than $150,000.00.

6.     This Court has personal jurisdiction over Defendant MUSIC. At all relevant times Defendant has engaged in substantial business activities in Virginia. At all relevant times Defendant transacted, solicited, and conducted business in Virginia through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Virginia. Further, Defendant purposefully availed itself of the benefits and privileges of Virginia jurisdiction by selling Plaintiff insurance in Virginia which is the subject of the dispute in this matter.

7.     Venue is proper in the Eastern District of Virginia because Defendant transacts business in this District and because a substantial part of the events giving rise to this claim, including Defendant's sale of business interruption insurance to Plaintiff, occurred in this District.

**PARTIES**

8.     At all relevant times, Plaintiff Rush Hour is authorized to do business in Virginia. Rush Hour owns, operates, manages, and/or controls a location at 1 Town Centre Boulevard, Suite 3100, Fredericksburg, Virginia 22407.  Plaintiff's business is owned by Paul Wood and Cheryl Wood.  Paul and Cheryl Wood are citizens of Virginia.

9. Defendant, MUSIC is an insurance carrier that provides business interruption insurance to Plaintiff. MUSIC is headquartered at 6263 North Scottsdale Road, Scottsdale, Arizona 85250.

10. At all relevant times, Defendant issued an insurance policy to Rush Hour (policy number is MP0048001002443) that included coverage for business interruption losses incurred by Rush Hour for the period from August 22, 2019 through August 22, 2020. *See* Letter from Defendant addressing Plaintiff's policy, attached as Exhibit 1.

11. The policy, currently in full effect, includes coverage for, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

12. Plaintiff Rush Hour submitted a claim on March 26, 2020 for a date of loss of March 17, 2020 pursuant to its policy. Defendant rejected Plaintiff's coverage, finding that the Civil Authority Coverage did not apply because Plaintiff did not suffer damage to its property. Defendant also denied coverage under Contingent Business Interruption because of lack of damage to the property.

## FACTUAL BACKGROUND

### I. Insurance Coverage

13. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

14. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Properties is specifically prohibited by order of a Civil Authority as the direct result of

a covered cause of loss to property in the immediate area of Plaintiff's Insured Properties. This additional coverage is identified as coverage under "Civil Authority."

15.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

16.     Nonetheless, based on information and belief, Defendant has accepted Plaintiff's policy premiums with no intention of providing coverage for business losses resulting from the orders of a Civil Authority that the business be shutdown, or any related property damage.

II.     **The COVID-19 Pandemic**

17.     The scientific community, and those personally affected by the virus, recognize the COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the shop.

18.     On information and belief, the virus that causes COVID-19 remains stable and transmittable: in airborne aerosols for up to three hours; on copper for up to four hours; on cardboard for up to 24 hours; and on plastic and stainless steel for up to two to three days. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

19.     The CDC has issued a guidance recommending that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

20.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

21. China, Italy, France, and Spain have implemented procedures requiring the cleaning and disinfection of public areas prior to allowing them to re-open publicly due to COVID-19 contamination.

## III. Civil Authority

22. On March 12, 2020, the Governor of Virginia declared a Public Health Emergency related to the COVID-19 pandemic.

23. On March 13, 2020, all K-12 schools in Virginia were closed.

24. On March 17, 2020, the Governor of Virginia prohibited public establishments from servicing more than 10 people in an establishment.

25. On March 24, 2020, the Governor of Virginia issued an order requiring the closure of non-essential businesses, including businesses like the Plaintiff. This order was originally intended to remain in effect until at least April 30, 2020. It has since been extended until June 10, 2020.

26. As a direct consequence of the stay-at-home orders for public safety issued by the Governor of Virginia, Plaintiff's business have been unable to operate. Accordingly, Plaintiff submitted a claim to its insurance carrier seeking coverage related to such losses.

27. Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have

people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

28. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. The COVID-19 pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

29. The Civil Authority Orders and proclamations referenced herein, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true for businesses such as Plaintiff's, where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

### IV. Impact on Plaintiff

30. As a result of the Civil Authority Orders referenced herein, Plaintiff was required to shut its doors to customers and cease business operations on March 17, 2020 and continues to be shutdown.

31. Prior to March 17, 2020, Plaintiff was opened from Monday thru Thursday, 10:00 am - 10:00 pm; Friday thru Saturday, 10:00 am - 11:00 pm; and Sunday, 11:00 am - 8:00 pm.

32. Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the establishment, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

33. Businesses like the Plaintiff's are also more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer as compared to a facility with open-air ventilation.

34. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the COVID-19 virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to business property and to one another.

35. The COVID-19 virus is physically impacting Plaintiff. Any effort by the Defendant to deny the reality that the COVID-19 virus has caused Plaintiff physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

36. A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without bargained-for coverage required to ensure the survival of Plaintiff's business due to the shutdown caused by the Civil Authorities' Orders. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a

substantial loss of business income and additional expenses, which losses are covered under the terms of the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

37. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

38. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

39. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

   a. The Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Property;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Civil Authority Orders trigger coverage under the terms of the Policy;

   d. The Policy provides coverage to Plaintiff for any current and future Civil Authority closures of its business in Virginia due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters;

   e. The Policy provides business income coverage in the event that the COVID-19 pandemic has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

   f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

40. Plaintiff seeks a Declaratory Judgment to determine whether the Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Property as defined in the Policy.

41. Plaintiff further seeks a Declaratory Judgment to affirm that the Civil Authority Orders trigger coverage under the terms of the Policy.

42. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future loss of business income sustained and any extra expense incurred as a result of Civil Authority Orders requiring closures of its Virginia business due to physical loss or damage caused by the COVID-19 pandemic.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access the Orders of the Civil Authorities constitutes the type of prohibited access as defined in the Policy.

c. For a declaration that the Civil Authority Orders trigger coverage under the terms of the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued Civil Authority closures of its Virginia-based business due to physical loss or damage resulting directly or indirectly from the COVID-19 pandemic under the Policy's Civil Authority coverage parameters.

e. For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f. For such other relief as the Court may deem proper.

### TRIAL BY JURY IS DEMANDED

Plaintiff hereby demands trial by jury.

Dated: May 6, 2020

Respectfully submitted,

*/s/ Justin M. Sheldon*
Jeffrey A. Breit (VSB No. 18876)
Kevin Biniazan (VSB No. 92109)
Justin M. Sheldon (VSB No. 82632)
Breit Cantor Grana Buckner, PLLC
7130 Glen Forest Drive, Ste. 400
Richmond, VA  23226
Telephone (757) 622-6200
Facsimile: (757) 299-8022
Jeffrey@breitcantor.com
kbiniazan@breitcantor.com
jsheldon@breitcantor.com

Richard M. Golomb, Esq.*
Kenneth J. Grunfeld, Esq.*
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.*
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III *
Rachel N. Boyd*
Paul W. Evans*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

**pro hac vice* applications to be submitted

***Counsel for Plaintiff***